which is 23-6790, United States versus Garns. Good morning, I understand you would like to reserve two minutes for rebuttal, is that right? Yes, your honor. Okay, you can proceed whenever you're ready. May it please the court, Antoinette Ronghill for the United States, I'm an assistant United States attorney in the Eastern District of New York. This is a case about the government's ability to introduce threatening statements in a threats trial. The district court's ruling should be reversed because the statements at issue are at the core of the government's case. They are the crime. Not only are the statements the charged crime, but they're highly probative of the defendant's intent, which is the linchpin of what will be contested at trial. There is no dispute that Garns made these statements. The whole ballgame is what Garns meant with his words. This court should reverse for four primary reasons. First, the district court radically underestimated the probative value of the statements by characterizing them as marginal as to mens rea and generally of limited probative value. Second, the district court incorrectly evaluated the prejudice of the statements when it applied this court's jurisprudence on the government's affirmative use of a defendant's actual criminal history. This scenario is distinctly different. Here, the government seeks to introduce the defendant's own statements, statements the defendant chose to make about his exaggerated criminal history, which are the words that he used to carry out the threats that are charged in this case. The defendant wants to have his cake and eat it too. He made deeply threatening statements, relying on his supposed criminal history to intimidate. And now he's trying to argue that those very statements are too frightening for the jury to hear. Third, the district court improperly declined to issue a limiting instruction, which would have addressed the concern of unfair prejudice. And finally, the district court erroneously considered what it viewed as strong evidentiary alternatives to the statements, essentially disregarding a long-held principle from the Supreme Court's decision in Old Chief, that the government is, quote, entitled to prove its case by evidence of its own choice. Counsel, in terms of the limiting instruction request, the one the government proposed, I could see why the district court might have concerns about that, which was to say, to affirmatively tell the jury the record is inaccurate. He received a total sentence of, or sentences totaling 18 and a half years. He actually only served seven. He may have been in and out on parole violations, according to the record. But what if the instruction had said, which courts can give, which is this evidence is being introduced only for the purpose of, you should not. It's being introduced only for the purpose of showing that the defendant, in using these words intended to instill fear in the listener, intended to make a true threat, not for the truth of the statement itself. You should not assume that it is true or not, and it's being introduced only for that purpose, whether it was true or not, as opposed to accurate or not. Is that an instruction? I mean, the instruction the government suggested is problematic, because it's letting the jury know, in fact, he does have a record, and in fact, it's just inaccurate. So the district court could have given the government's proposed instruction, but I think DeMario, a Third Circuit case, is very on point, and sort of describes exactly what Your Honor says. In DeMario, which was a 115 prosecution, they allowed a defendant's criminal history and gave an instruction, just as Your Honor mentioned. In DeMario, they said, you have heard evidence of the defendant's prior criminal record. You have also heard evidence and received documents pertaining to that record. I instruct you that this evidence was introduced for three reasons. You may consider that evidence only for any or all of these reasons, and that's at 415. And that was to establish that the memorandum, which was the threat in that case, was a true threat about DeMario's criminal intent, and third, to show that DeMario's motive in sending the memorandum to the judge who the threat was issued. So certainly, the district court could have given an instruction like Your Honor says, or obviously is the one the government proposed, but that's what the error is here. Instead of cabining appropriately what this evidence is to be considered for, the district court just excluded it, and it is the crime. Could I ask just a factual question? Because I may have misunderstood something about the record. Is it clear from the record that he received an 18-year sentence of which he served seven and then was on parole? Or is it the case that he served, he was in prison for seven years on various charges over an 18-year period that he was in and out of jail? I got the impression it was the latter, but maybe I'm wrong. So I believe that the total amount of incarceration that he spent was seven years and that the defendant's commentary was that he spent, or that the defense brief was that he spent 18 years in and out of the criminal justice system. But do we know more than that? I mean, does the record say that he received at some point an 18-year sentence? Because that was the premise of Judge Kahn's question, and that wasn't what I understood, but I could easily be wrong about that. So I wanted to know if you know the answer or if the record contains the answer. I don't, I don't, yeah, in Government Appendix 49 in the footnote it says, including parole violation sentences, Mr. Garnes received 54 months in 1994, and he was in 2008, totaling 18 years. So there are 18 years' worth of total sentences on various charges, but he didn't actually serve all of that. That's the correct statement? Exactly. Okay. Could I ask a different question? I mean, you emphasize that, you know, the government has its discretion in how it chooses to plead its case, which the court, the Supreme Court does say an old chief, but the government lost an old chief, right? And it's a little hard to say that's your case that you really want to rely on for this. And didn't we say in Jamil, and isn't it part of the probative prejudicial balancing, that whether the evidence is cumulative matters? Certainly it matters if it's cumulative, and the government would argue that these statements are not cumulative.  I understand that argument. I'm just trying to get at a couple of things here. One is, you started off by saying these are the threats. Well, these are a part of the threatening conversation, and your argument is that they, and I appreciate that argument, that they are enhancing the threat. That's the purpose of saying these things. It's as if he came in and said to the person falsely, I'm a trained CIA assassin, so when I say I'm going to come after you, you better watch your step. And that's entirely false. I doubt there'd be much of an argument that that should come in, and you're saying this is the same thing. But it isn't really, there's plenty of other evidence in the whole conversation from which a jury would be hard put not to conclude that he is making threats. So the reason these are so important is how, it's how the defendant chose to threaten people, right? And I think the decision in Pepin is very instructive on this point. In Pepin, that was a murder case, and the district court precluded evidence about the defendant's dismemberment of bodies. And this court reversed, because it said that's the way that he killed people, right? The jury should know what he intended. He was calm, he was cool, collected when he murdered those victims, and that's what you have to show for an intentional murder. And the government would say that this is the threat's version of- An available defense here, that I was just blowing off steam, I didn't really mean to scare anybody. I was just talking about the fact that I'm desperate, and I want to impress them that I'm desperate. And I didn't really mean to scare anyone this badly. And you're saying these statements are very helpful, precisely because they're false in a way. Precisely because he's exaggerating. And he's got, I got ten felonies, I've been in jail for 18 years, I don't mind going back to jail. I'm more happy there than, all of that, you're saying, adds something beyond just the naked statement, I may have to hurt somebody if I don't get my way. Exactly, Mr. Garns didn't say that he spent 18 and a half years in prison once. He didn't say it twice. He said it four times, and I think that is instructive for the jury that the reason he's emphasizing it, and it's also what the government expects the victims to testify about, that the reason I believed him is because he cited the 18 and a half years. He said that he had ten felonies. And also when he talks about the state prisons that he's served time for, in the record it shows that he hasn't spent time in any of those prisons. And instead he said, no, no, I didn't spend time in Rikers, I spent time in state prisons, Attica, Elmira, Clinton. He's emphasizing this because he wants to communicate to his listeners that he means his threat. I have one final question, which is about the standard of review here. I kind of imagine Ms. Cassidy is sitting over there being somewhat frustrated because she's usually sitting over here and saying that some evidence should have been excluded and the people from your office and other similar offices sitting on the other side are getting up and saying, yeah, well, maybe, blah, blah, but this is something, a decision that's within the district court's discretion and we have to give the maximum deference to the decision of the person on the scene. And I realize you have a couple of cases, one of which is pretty close in Jameel, where we did say that a court exceeded its discretion in excluding evidence that the government wanted to offer. But first of all, isn't that the standard of review, that we have to give weight to discretion? And how do we decide, when we look at a case like Jameel, is this kind of setting an actual rule here? Or is it just a very case-bound, case by case, each time we have to decide whether we think the balance got out of hand? So I think in Jameel, the Second Circuit found that the recordings were probative because they were substantial about bearing on the question similar to here of Jameel's knowledge, which was an element, just like it is for our threats case. So that's what you're saying is basically the more tightly bound the evidence is to the element that enhances its probative value considerably. It's not like 4-4-B or something. If it's going directly to the element of exactly what he did, the actus reus in his mens rea, you're at the heart of the case, and therefore, to the extent it's reflective of those elements, your probative value in the balancing test is sort of reaching its acme. Is that one way of putting it? Exactly. Very well put, Your Honor. It's not only that it goes to an element of intent, but it also is part of the charge crime. And I think this court's decision in Malik is helpful, too. That's an instance in a 115 prosecution where part of the defendant's threat was, my criminal rap sheet is no joke. He's referencing his criminal rap sheet. And then he's further describing what crimes that he's known for in prison. And those weren't excluded because they were part of the threat that he made to a federal judge, just like the statements that Mr. Garns made about his 18 and a half years in prison, his mad felonies, nine or ten felonies, and also the time that he spent in those states. And this is going back to your idea. It's not only tying it directly to what it's proving, which is the element. But to the extent that you have proof of someone's mens rea, their own words are among the strongest indicia one may ever find of one's mens rea. So again, I take it that you're arguing that's another reason why the appropriate value of these statements is at or near its maximum level. Exactly. The difference between Malik and Jamil is that Jamil was a government appeal and Malik is affirming an exercise of the district court's discretion to admit evidence and it affirmed the conviction. There aren't that many cases, and I appreciate that that's because the government exercises a great deal of restraint. And they don't challenge every time they don't like what a district court rules on a motion in limine. But there are, Jamil is one of the unusual cases where the government took this step as you're doing here and won. Yes, Your Honor. All right, I think we understand your position. You will reserve two minutes for rebuttal. Why don't we hear from Attorney Cassidy for the appellee? Good morning, Your Honors. As Judge Lynch noted, the standard of review is particularly onerous for review of a Rule 403 decision. As this court held in Ottawa, so long as the court has conscientiously balanced the probative value of the evidence with the risk of prejudice, its conclusion can be reversed only if it is arbitrary and irrational. The question- But if the court gets the probative value wrong, I mean just doesn't recognize the probative value that, in this case, goes to probably the most important element, the mens rea, the intent to instill fear. I understand the high standard. But when that's the case, what's the purpose of this court? Otherwise, then we could just assume any time a judge makes a decision in its discretionary, it will never be subject to review. I think that's the concern I have here, is that the court's, what appears to be a failure to recognize how probative it is. And I have a follow-up, if you can answer that, and then I have a follow-up question. I disagree that the court failed to recognize the probative value. The court rejected the argument that it was not relevant. The court found that it was, in fact, probative, but that it had marginal, it was a balancing question. That it's additional probative value, given all the other statements, including many other statements beyond the actual threatening statements themselves. Considering all of that evidence, that the additional marginal probative value here was outweighed by the danger of undue prejudice. Not prejudice, except that the court in making that analysis looked at the statements like, I'm going to shoot up. Do I have to shoot up, shoot five people? All of the statements that were the threat itself, I'm going to cause harm and shoot. Didn't even look at the one statement that may come close, which is, I don't have a problem going to jail. I don't care about going to jail. Do you see a difference between, I don't care about going to jail, which is akin to saying, I don't care about the consequences. Versus, I don't care about going to jail because I've been to jail. Do you agree that that has a different impact on the listener? That has a slightly different impact. But the court did consider all the statements. The court considered the whole conversation. The ones that it mentioned might not have included, I don't mind going to jail, I get three meals and a bed. But she also considered, the district court also considered the statement, I know this is recorded, and that's a good thing, because when I do what I'm going to do, they'll know why it was done, and other statements like that. There were several statements that he made. Y'all going to make me go to jail? That's all coming in. I don't care because I get the three meals. I know this is recorded. All of that is coming in. In fact, there are only five small snippets in the course of a disjointed rant in which he made many statements, including some that did also bolster the threatening nature of the threats themselves. Does the defense anticipate, let's assume for the sake of argument we were to affirm. And let the district court's ruling stand. Is the defense saying that you're not going to argue at trial that those statements about I don't mind going to jail, and all those sorts of things that do come in, are you going to contest that that actually manifests his true intent to threaten someone, and that, yes, the effect on the listener is absolutely to instill fear. Or are you going to argue, no, that's the sort of an off-the-cuff, imprecise kind of comment that someone might make loosely, without actually meaning it or having any actual lack of fear of going to jail. I mean, it seems like that's the natural thing the defense would argue, and ought to argue. But are you saying you would abandon those arguments and say, no, no, no, that's all real, ladies and gentlemen. We're not saying that. We're certainly not saying that we'll make the government's argument for it, that yes, those were all very threatening statements. So I guess the question is then, how is it that the government can't tell the jury what the guy actually said? I mean, one of the things that bothers me about this, and I understand that district court has a gatekeeping function to keep out some duly prejudicial information, but the jurors are called upon to make a comprehensive judgment here about what this guy meant and how it could be reasonably perceived. And to actually hide some of his key words from the jury seems awfully disturbing. And frankly, in some respects, in this context, it's very disrespectful of the jury, right? The idea that they're basically a bunch of sheep who can't follow a limiting instruction. And that they deserve not to be told what this guy was saying. He chose to say these things. And they're going to be given a sanitized version of what he said? I mean, if he said, I don't know, let's say he had graphically described how he was going to come there and dismember the person who was there. Sort of a predictive Jamil sort of a case. Say, I'm going to come here and let me tell you exactly how I'm going to cut you up, you know, piece by piece with a jigsaw. We say, that's kind of a little graphic, I don't think we should really be telling the jury that. No, your honor, that's a completely different situation. Well, it would be a different sort of prejudice, because you'd say, well, you know. But it wouldn't be undue. If I'm ever convicted, I'm sorry, I'm spitting hypotheticals here. But what if he had also said, well, and I don't really care if I go to trial, because if I do, I'll kill the jurors before they can convict me. You can keep spitting these things out, but if he's the one choosing to describe why he is, in fact, so threatening. Why does the jury not get to hear that? Okay, I have several answers to those questions. But one is the situation in which he's threatening to cut someone in pieces or say something. That's only prejudicial because he said it. It doesn't have extra prejudice outside of the fact that he said it. In the case of his criminal record. No, let's pause on that for a second, what do you mean by that? Well, the question is whether the prejudice is unfair prejudice. And the prejudice flowing from- Well, they just find it gruesome and disgusting. And anybody who would say something gruesome and disgusting must be guilty of stuff. I mean, that's why we leave gruesome pictures out, right, like gruesome autopsy photos. If no one's contesting that this person was shot in the head, you may cut out all the autopsy photos. Here's, there's a different prejudice aside from just the inflammatory nature of the statements. There's a prejudice that the jury would convict him just because they know that he's a felon, a convicted felon, that he's a criminal, that he's- So why can't you instruct the jury? By the way, you can't base your guilty verdict in any way, in any consideration of whether or not, based on his felony status. I don't know how you craft the limiting instruction, but you can't hold it against him. All you can consider that for is for the limited purpose of something along the lines of what Judge Kahn said, to determine what his state of mind was, what his intent was, whether he was trying to instill fear or convey a threat, and whether it would have been reasonably perceived as a threat. And those are the only two things you can think about it for, you may consider it for no other reason. Well, the court carefully considered the limiting instruction option and decided that in this case, it was very problematic. There's a particular conundrum about the instruction in this case. First of all, these statements were not true. His statement about his criminal record, and by the way- And the government offered to have a limiting instruction that said that. Right, but a limiting instruction that said that would just open a whole can of worms, because then the government argues that he deliberately exaggerated his record to make himself sound more menacing. But isn't that the point, so let's think of a hypothetical. If somebody without a record says, I'm a felon, I'm an assassin, I'm this, I'm that. And does that for the purpose of, and I've been to jail, so I don't care about going to jail. If you were thinking about really instilling fear in someone, no one would doubt that that evidence would come in. And there would be a limiting instruction that you, I would assume, a defendant who chose ultimately not to take the stand, it couldn't prove the negative. Would want a limiting instruction. So what we're creating is a situation where a person with no record who exaggerates and makes himself appear to have a record and appear to have been in jail to carry out a threat. That person, the evidence is used against them. But someone who actually happens to have a record and chooses those same words, that evidence doesn't come in at all because we're afraid the jury's going to speculate as to what his record actually is or if he has one. There could be a proper instruction that the court could give. That you are not to assume someone has, you're not to assume the truth of that statement. Regardless or not, whether the defendant was truthfully speaking when he made that statement. Whether it's true or not, you're only to use it for the purpose of whether if those words were said, they were meant to instill fear because otherwise we create a system where somebody who doesn't have a record, who chooses to commit an offense in the same way, they have to live with that evidence. And then the way to explain it might be to take the stand and say, I don't have a record, and then subject themselves to cross-examination, et cetera. The point of Rule 403 ruling, it's not creating any kind of a standard. It's an individual assessment by the judge based on the facts on the ground as to whether a particular piece of evidence, even though probative to some respect, is outweighed by its prejudice. It's not creating any standard. To reverse in this case, reverse such a discretionary ruling would create a bad standard. Well, how do you deal with Jameel then? Because Jameel did exactly that, it seems to me. You know, if it's really as strong a standard, I must admit I had to read Jameel's a few times before I even understood exactly what the probative force of this was supposed to be. That's partly, I think, Your Honor, because the judge misunderstood the probative force. That was a case where the judge below misunderstood the probative force, but in a subsequent way, misunderstood the government's argument, and also there was no prejudice identified. The prejudice identified was just, you know, confusion, cumulativeness, no real prejudice. That was a very different kind of case. In every one of the cases where this court has reversed a discretionary ruling, four or three ruling, cited by the government, the government's appeals, Jameel, Kohlrafe, Dupre, and Pepin, there was some problem with the process. It wasn't just that this court simply rebalanced. It was- Well, that just may be, that's a small sample size. You're not saying that if a court messes up and underestimates the probative value that we can't reverse, it may just be that the four or five cases that came to us happened to involve a process error. Because it's extremely rare for the government to appeal on an interlocutory basis. But here we are. An ordinary 403 ruling. This may be an extraordinary case. I think that's what they're arguing, that this is highly unusual. So, the fact that it doesn't happen very often doesn't mean that it's not happening now. It's not unusual. And the fact that it's not unusual to exclude evidence of a criminal record. Can I ask you to go back to Judge Kahn's question? And I understood your response to the, that there was no blanket rule being created here and that every case involves a very specific set of facts in which the 403 analysis is embedded, and I understand that. But what I understood her question to be is sort of effectively posing a hypothetical. Let's say all the facts in this case are held constant, except for one. The only difference is that your client never was convicted of any crime and never spent a day in jail. Would the district court's analysis still be valid? And I understood her to suggest, no. No, I think that presents a very different situation. And why? Why? Because, first of all, it's very easy to instruct the jury that there is just no criminal record. That he actually has no criminal record, which is not the case here. Why is it sufficient to just say, you're not to take this for the truth. In fact, it is false. You're only to take this for whatever value you tend to assign it in assessing the value of what this says about whether he was serious or not. Well, that would be a correct limiting instruction. That would solve the problem in the case that the court poses. Well, isn't that what the government offered? They didn't say it's exaggerated. They said it's inaccurate. False is the difference between what's enough of a limiting instruction and what's not. Because that instruction would just feed into the government's argument that he just made up the record, the very serious record, to make himself sound more menacing. So that presents a different- Excuse me, I'm not sure it follows that they're allowed to say that. Whether it's true or it's false doesn't make any difference. The point is, from the government standpoint, that he's telling these people this stuff. And he's telling it to them for the precise purpose of frightening them. Well, that's the question, your honor. And that's what we disagree with, and that's what the court found, that there was only a marginal support for that inference. First of all, there were five snippets in which he referred to his record and his felonies. Two of them, in two of those, he was clearly saying something else. He was complaining, he was lamenting his record. Because his record prevented him from getting a job, in one. Where he said, look, I got mad felonies, I got like nine, ten felonies, right? You know how hard it is for me to get a job? Begging these Department of Labor employees to have sympathy on him. But when they see what I've been incarcerated for, I get no job. In another, he complained that when he lost his job during COVID, he spent all his savings rather than commit crimes to go back to jail. Because they're 18 and a half years in jail. I spent over 20,000 in my bank account to make myself whole, to make myself not stop from robbing a bank. These are two of the five. So it's clear that he really had his record in his mind in this desperate situation. But that's the defense, right? I understand that that would be the defense at trial. Look, he's rambling, he's saying these things because he's desperate and he's rambling. He never intended to create fear. The other narrative, right, that he's defending against is that when he used these words, and the fact that he had been to jails he had never been, or the fact that when he exaggerated his own record, he did so for the purpose of telling the listener, look, when I say I'm going to shoot up people, I mean it. And so you can't have it both ways. Understandably, the court denied the motion to allow the defense to introduce the very defense that he didn't mean any of these things. He was desperate, he was in a situation where he had no money, he needed, and that's fair, right? The defendant should and ought to present that defense. But then the jury should be entitled to hear the words he chose that in the state, the government, to try to establish that he had the mens rea, that his intent was something other than a rambling, desperate statement as opposed to I really want to instill fear in these people. And the district court found that based on all of the statements he made, not just the threats themselves, which were numerous, but other things that he said that was, listen to me, they're recording this, and I hope they are, because I hope they know why I did it, I don't mind going to jail. All of that, that the inference that the government sought to draw, that he meant for the listeners to take him seriously, was amply supported by other statements he made in the record. But the problem when you make that argument is that they have to satisfy proof beyond reasonable doubt. You keep saying, well, they've got enough evidence, right? It's basically saying, they've got enough evidence to prove this. And I suppose, maybe implicitly saying beyond a reasonable doubt, but you're going to go into the courtroom, and as you should, you're going to argue there is not even close to proof beyond a reasonable doubt. So to say to them, well, you got enough, I understand if we're accumulative. If he said this 22 times, and he just rambled on for 16 hours, at a certain point the court might say, look, we're not going to waste the jury's time. Just play the selections where he says it four or five times so you understand he made a repeated point. Let's not sit here for 16 hours. But that's not the point here. To say, basically, they have enough evidence, but then turn around in trial and say, they don't have enough evidence. How does that work? The court wasn't saying they have enough evidence. The court was saying that for the specific additional probative value that these statements would make, that they had other evidence for that inference aside from all of the other evidence. And at any point, this decision could be revisited if it turns out that somehow the government isn't making its case. But we're here now, we've got to decide this. Yeah, but this court has never reversed one of these without- Are you suggesting that it's going to come up to us mid-trial? No, I'm saying that if, for example, one of the arguments the government makes on appeal is that it expects the DOL employees to testify that they took the threat seriously, in part because of Garnus' statements about his record. This argument was not made below. It was never made before the district court. There's no citation in their brief to anything in the record because it wasn't made. The district court didn't consider this. I read a transcript where counsel said to the court, your honor, we need a decision on this because we expect witnesses to testify that these statements is what instilled fear in them. Did I misread that? No, I didn't see anything like that. It's not in their papers, it's not in their motions. They have two motions, two submissions in response, in the appendix. In response to this argument. I guess I'm not really sure how that matters anyway. What their witnesses are going to say or not say, because the question is whether his words are going to come in and they're going to have probative value. Maybe they will have enhanced probative value if they dovetail with other witnesses' testimony. But it seems to me that they either have the probative value that they claim or they don't. I just have to reiterate that this court has not intervened before trial in a district court's management of the trial in a 403 ruling. In any other case in which the district court properly understood exactly what the government's argument was. Considered the weight of the probative value of the evidence. Considered the prejudice, identified an actual real prejudice, not just confusion, but the real prejudice of someone's criminal record being before the jury, and just rebalanced. I don't think that's a correct statement of the case law because these other things that the courts were looking at are kinds of prejudice. There are things that are explicitly in the rule as examples of prejudice, and it's just a question of degree. And I have a hard time not discounting the degree of prejudice by the fact that this is not the case of the government coming in and gratuitously saying, we want to introduce somebody's criminal record. This is what he introduced into the case. They did do that, by the way. They tried to get his actual criminal record in affirmatively as affirmative evidence. Yeah, and it was excluded, right? It was excluded. Right, it was excluded. But I will say one thing, though, when we talk about, I used to hate it as a prosecutor when a judge would say, you've got enough. Let me be the judge of that. On the other hand, we all know that if the ruling had gone the other way, and these statements were admitted, and you came up here arguing that they shouldn't have been admitted, they would surely tell us this was harmless error. Of course they would. They would surely tell us. We had plenty of other evidence about how serious this was. And these few things, and after all, they point to the very statement that, if you were not objecting to that one, that he had said, I'm not afraid of jail. Exactly. Well, if they're going to let that pass, this is no worse than that. Exactly. It's really harmless. And we'd be in the same position with the shoe on the other foot. And that's the main thing that gives me pause here. And also, if I could just note, and I just want to get to Pepin, because the government relies heavily on Pepin. But in Pepin, the district court itself had found, in its determination, that the evidence was so probative on guilt, the evidence of cutting up the body at the same time as he killed the person, that it was not outweighed by prejudice. But excluded it only on the ground that it might be prejudicial at the penalty phase. It was a death penalty trial. And this court held that that was not a basis to exclude it from the guilt trial. So it wasn't this court going in and just rebalancing. None of those cases involves just a rebalance. And they all involve some wrinkle, some odd error in the process of the balancing. Which this court doesn't have. This case does not have. It does not present that. We urge your honor to affirm. Thank you. Thank you very much. We'll hear from the government, and we're going to hold you tightly to two minutes of rebuttal. Sure. As Judge Nardini pointed out, this is the extraordinary case. This is a case where the district court is keeping out evidence of intent and of the actual crime. And if we look at the defense's citation of Awadallah, it's such a different case, right? That's a case in which they're trying to introduce grand jury testimony for a case about perjury in front of the grand jury. It goes, there's just too much possibility for there to be, the jury to be misled in that instance. And in this case, and sorry, in Awadallah, there was also alternatives to the evidence. There could be the court reporter, the assistant United States attorney, the translator who could have testified. Here there is no substitute for Mr. Garns' statements. He made those statements, and the government must prove the intent of those statements. And he's the single source that can do that. Can I ask you, if you were to get the relief that you seek and the government would have to tread an awfully fine line at trial, watching every word that came out of your mouth, I don't know, whoever tries the case, right? To be very careful not to overstep that limiting instruction, right? So what would the government intend to argue? What would be the kinds of arguments the government would make to the jury or questions asked of witnesses that would not overstep the limiting instruction? And let's take, for example, the one that you proposed, and not create a minefield that you, I think, are professing that you can avoid. Yes, that the 18 and a half years cited, the time in prison, and the mad felonies, nine or ten felonies. That that just speaks to Mr. Garns' intent. It's not an argument about propensity. That would not be in the case. All you have to say is, why did he say these things? That's the question for you, ladies and gentlemen of the jury. Why did he say these things? The court told you, not true. The court told you, don't take it for the truth. We're not asking you to take it for the truth. Doesn't matter if it's true or false. Doesn't matter whether it's part true or part false. What matters is, he said these things in order to scare people. That's the inference that we're asking you to make, and why else would he say it? And they can come back and say, there are other reasons why he would say it, and the jury would decide. I'm not sure that you have that hard a road to hoe. Right, exactly, and also that you heard from the victims as to why they said they were afraid. And it's going to be in their- This is where a lot of people step on a lot of landmines over time. I think we can do it carefully. So if that were the case, I think even with the limited instruction, the government would have to be extraordinarily attentive to everything it said. Because even if you win, you wouldn't want to come back up here and say, well, I know you gave me this limited instruction, but guess what? Yeah, we played fast and loose with it. That would have to be an awfully tight game. It would be, but these statements are critical to the government's ability to prove intent, and also are the charge crime, and that's why we're, before your honors, in this very rare interlocutory appeal, as we've all discussed. Okay, we have nothing further. I want to thank both parties for outstanding arguments in this case. It's a very difficult case. We appreciate that, and we appreciate the advocacy on both sides. We will, as with every other case today, reserve decision.